Filed 4/1/26  Beer v. Valve Corp. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JONATHAN BEER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant and Respondent. | B344782<br><br>(Los Angeles County<br>Super. Ct. No. 24STCP03209) |

APPEAL from an order of the Superior Court of Los Angeles County, Kerry R. Bensinger, Judge.  Affirmed.

Morrow Ni, Jing He; Bucher Law and William Ward Bucher, for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Virginia F. Milstead, Michael W. McTigue, Jr., and Meredith C. Slawe, for Defendant and Respondent.

**INTRODUCTION**

Appellant Jonathan Beer is one of a number of consumer plaintiffs arbitrating antitrust claims against respondent Valve Corporation over Valve's computer game sales.  During the arbitration, Valve moved to disqualify the arbitrator, citing a previously undisclosed conflict of interest.  Beer opposed, arguing that Valve's request was untimely and barred by California law.  The American Arbitration Association (AAA) disqualified the arbitrator.

Beer filed a motion in superior court to vacate the disqualification order. The court denied the motion, finding that the order was not an "award" subject to review by the court under Code of Civil Procedure section 1286.2.[1]  Beer appealed, arguing that the court erred in concluding it could not review the decision to disqualify the arbitrator.  We agree with the trial court that the disqualification decision was not a final award reviewable by the court.  Additionally, the arbitration is ongoing and Beer has presented no grounds for review of an interim arbitration order.  We therefore affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**I.**     ***Background[2]***

Valve owns and operates Steam, a digital distribution and online gaming platform. Consumers subscribing to Steam gain access to online video games and related content, including games made by Valve and by other developers.  Under the Steam subscriber agreement (SSA), the parties agreed to resolve all disputes through "individual binding arbitration" to be administered by AAA and governed by the Consumer Arbitration Rules.[3]

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     We remind both parties of the requirement that appellate briefs recite the significant facts of the case "limited to matters in the record."  (Rules of Court, rule 8.204(a)(2)(C).)  We disregard the references included in both parties' briefs to matters outside of the record and admonish the parties that inclusion of such matters does not aid the clarity or persuasiveness of their positions.

[3]     In a footnote, Valve refers to a "current" SSA, purportedly updated in 2024 with amended dispute resolution terms.  Valve contends the appeal

In 2021, a game developer and several consumers filed a putative federal class action against Valve in federal district court in Washington (developer class action). The plaintiffs alleged that Valve engaged in anticompetitive practices to inflate prices of the games on its Steam platform. The federal district court granted Valve's motion to compel arbitration of the consumer plaintiffs' claims pursuant to the SSA. The court stayed the claims by the consumers but allowed the claims by the game developer to proceed.

In July 2023, Beer's counsel served a demand for arbitration on Valve on behalf of more than 44,000 consumers, including Beer, again alleging antitrust claims. This AAA arbitration followed, with Beer as the claimant along with 24 other individuals, and Valve as the respondent.

In April 2024, AAA notified the parties that it had selected Martin Katz as the arbitrator for the case. Katz provided his disclosures, including stating that he was no longer an equity partner at the law firm Sheppard, Mullin, Richter & Hampton, LLC, but continued to serve as "of counsel" for that firm. Katz further stated, "although I have no personal knowledge of the matters (and did not work on them), I am informed that over the years, [ ] Sheppard Mullin has worked on various matters that may have involved Steam in one capacity or another (but not as a client)." AAA also informed the parties that they had 15 days to serve a notice of disqualification of the arbitrator pursuant to section 1281.91.[4] After that deadline passed, AAA confirmed Katz as the arbitrator on April 25, 2024.

_____

"should be summarily dismissed because the underlying arbitration may no longer proceed" due to a lawsuit it filed seeking to enjoin further arbitration. This subsequent SSA is not in the record. Moreover, we need not consider Valve's argument as it was raised in a footnote and was not supported by legal analysis or citation to authority. (See *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 ["Footnotes are not the appropriate vehicle for stating contentions on appeal"]; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1260, fn. 10 [argument raised in footnote without analysis or discussion is forfeited].)

[4] Section 1281.91, subdivision (b)(1) provides that a proposed neutral arbitrator "shall be disqualified" if a party serves a notice of disqualification within 15 calendar days after service of the arbitrator's disclosure statement. However, a party's failure to timely serve a notice of disqualification waives the right to do so, unless the proposed arbitrator "makes a material omission

Following a preliminary management hearing, the arbitrator issued a scheduling order in June 2024.  The order set various dates and deadlines, and stated that the "Federal Arbitration Act [FAA] will apply in this Arbitration (as supplemented by any applicable state arbitration act not inconsistent therewith)."  The arbitrator also ordered Valve to produce discovery by August 28, 2024, including all documents it produced in the developer class action. Valve could file objections to this production by August 9, to be discussed at a hearing scheduled for August 13, 2024.

On August 13, 2024, the arbitrator issued an order following the hearing held earlier that day.  The order stated that at the hearing, the parties and the arbitrator had discussed multiple issues "at length," including a pending motion to dismiss filed by Valve, as well as Valve's objections to the previously ordered production of documents.  The order further stated that, given the appearance of new counsel for both parties and the statement by claimants' counsel that it had recently filed another class action that "might or might not impact the arbitration proceedings," the arbitrator was continuing the hearing to August 22.  In addition, the arbitrator ordered Valve to file a letter brief on several issues and encouraged the parties to meet and confer regarding the scope of document production.

## II.    *Valve's Motion to Disqualify*

On August 19, 2024, Valve's counsel sent a letter to AAA objecting to Katz's continued service as arbitrator on the matter, citing AAA's Consumer Arbitration Rules, rule R-19(b).[5]  Valve objected on the basis that Katz "and his firm represent or have represented video game developers who are absent

or material misrepresentation in his or her disclosure."  (§ 1281.91, subd. (c).) In addition, except upon grounds set forth in section 170.1, "in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter."  (§ 1281.91, subd. (c).)

[5]      Undesignated references to the rules are to the AAA Consumer Arbitration Rules. Rule R-19(a) provides that AAA "may disqualify an arbitrator who shows (1) partiality or lack of independence; . . . or (3) any grounds for disqualification provided by applicable law."  Rule R-19(b) provides, "If a party objects to the continued service of an arbitrator . . . the AAA will decide if the arbitrator should be disqualified."

4

class members adverse to Valve" in the developer class action, "thus creating a clear conflict," and that Katz did not disclose this conflict. Valve also noted that claimants' counsel had filed a second consumer putative class action against Valve (consumer class action). On August 19, 2024, the federal district court in Washington granted claimants' counsel's request to deem the case related to the pending developer class action and to assign the consumer class action to the same judge as the earlier matter. Valve cited Katz's biography on his firm's website, listing as clients several video game companies that were class members of the developer class action. Valve contended that Katz failed to disclose this information. AAA subsequently postponed the August 22, 2024 hearing.

Beer opposed Katz's disqualification, arguing that Valve's request was untimely and therefore barred under section 1281.91. Beer also argued that the arbitrator made substantive rulings in the June 2024 scheduling order, including ordering document production, thus providing an additional ground to bar disqualification under section 1281.91. Beer additionally challenged Valve's contention that the arbitrator failed to disclose material information and that there was a conflict of interest warranting disqualification.

Valve filed a reply, arguing that it had discovered the extent of Katz's conflict of interest, specifically his and his firm's representation of video game developers, when conducting a further investigation following the recent filing of the consumer class action. Valve therefore contended that the disqualification request did not violate section 1281.91. Valve also argued that AAA should apply its own Consumer Arbitration Rules, rather than California law, to determine whether disqualification was appropriate.

On August 27, 2024, AAA notified the parties that it was removing Katz as the arbitrator. AAA acknowledged the parties' dispute over the applicability of section 1281.91 but found that "[i]rrespective of whether or not the [Code of Civil Procedure] applies, the AAA made its determination based on R-19 of the AAA's Consumer Rules." AAA stated it was "in the process of" appointing another arbitrator to the case.

## III.  *Petition to Vacate Disqualification*

On October 4, 2024, Beer filed a petition to vacate the arbitrator's disqualification with the superior court. He argued that AAA had exceeded

its powers by disqualifying Katz in violation of section 1281.91. Thus, Beer contended that the order disqualifying Katz constituted an "award" subject to vacatur by the court pursuant to section 1286.2, subdivision (a)(4) (section 1286.2(a)(4)).

Valve submitted a response, arguing that the administrative decision to disqualify the arbitrator was not an "award" on the merits. As such, Valve argued that the court lacked jurisdiction to vacate the order under section 1286.2(a)(4).

At the January 2025 hearing on the petition, Beer's counsel noted that it had been four and a half months since the arbitrator was disqualified and AAA had not appointed a new arbitrator for the case. He argued that Valve wanted to delay the arbitration and AAA had a financial incentive to keep "repeat players" like Valve happy. Beer's counsel also contended that the arbitration concluded once the arbitrator was disqualified, making the decision reviewable by the court. If the court disagreed, he noted that Beer would return and raise the issue again once the arbitration was complete.

Valve's counsel argued that the arbitration was still pending. He explained that the delay was largely due to Beer's pending motion to vacate, as AAA was waiting to proceed with the arbitration until it had guidance from the court. Valve also reiterated that the petition should be dismissed because there was no award subject to review.

The court issued a written order on January 8, 2025. The court found that "No award, final or interim, was issued prior to or after Arbitrator Katz's disqualification." The court thus concluded that Beer could not seek relief under section 1286.2 because no arbitration award had been issued. The court rejected Beer's argument that the disqualification decision amounted to a final award because it terminated the arbitration. The court explained that "AAA did not terminate the arbitration. AAA's decision merely disqualified Arbitrator Katz. Indeed, Beer does not present any evidence to establish that the arbitration has been terminated or otherwise completed." The court also found that Beer did not seek any of the limited grounds for court intervention permitted during an ongoing arbitration. Accordingly, the court denied Beer's petition.

Beer timely appealed.

## DISCUSSION

### I. *Legal Standards*

"California has a long-established and well-settled policy favoring arbitration as a speedy and inexpensive means of settling disputes. [Citation.] This policy is reflected in the comprehensive statutory scheme set out in the California Arbitration Act. (§ 1280 et seq.)  The purpose of the act is to promote contractual arbitration, in accordance with this policy, as a more expeditious and less expensive means of resolving disputes than by litigation in court.  [Citation.]  'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' [Citation.] [¶] Thus, it is clearly the expectation of the parties to an arbitration agreement that the arbitrator's decision will be both binding and final."  (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1431–1432 (*Hightower*).)

Pursuant to section 1285, "[a]ny party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." Grounds for vacating an award are set forth in section 1286.2, including, as relevant here, that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  (§ 1286.2, subd. (a)(4).)  "The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; '[o]therwise courts may not interfere with arbitration awards.'" (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11 (*Cooper*); see also *ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 899–900 ["Judicial review of an arbitration award is ordinarily limited to the statutory grounds for vacating an award under section 1286.2 and correcting an award under section 1286.6."].)

We review a trial court's decision on a petition to vacate an arbitration award de novo.  (*Taska v. RealReal, Inc.* (2022) 85 Cal.App.5th 1, 9; *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743,

751.) We review any factual findings, to the extent the trial court made them, for substantial evidence. (*Cooper, supra*, 230 Cal.App.4th at pp. 11–12.)

## II.  *Analysis*

Beer contends the trial court erred in concluding that it could not review the disqualification order because it was not an "award" under section 1286.2. We agree with the trial court.[6]

Section 1283.4 specifies the requisite "'form and contents'" of an arbitration award. (*Ortiz v. Elmcrest Care Center, LLC* (2024) 106 Cal.App.5th 594, 606 (*Ortiz*); *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1137 (*Kaiser*).) The statute provides the "award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (§ 1283.4.)

"'The issuance of an "award"' meeting the requirements of section 1283.4 'is what passes the torch of jurisdiction from the arbitrator to the trial court.'" (*Ortiz, supra*, 106 Cal.App.5th at p. 606, quoting *Lonky v. Patel* (2020) 51 Cal.App.5th 831, 843–844 (*Lonky*); see also § 1285.) If an arbitration "'award' does not qualify as an award under section 1283.4, then the [trial] court is deprived of jurisdiction to confirm or vacate it." (*Kaiser, supra*, 13 Cal.App.5th at p. 1143; see also *Lonky, supra*, 51 Cal.App.5th at p. 844 ["[A] ruling that is not an 'award'" under section 1283.4 "is neither subject to . . . limits on an arbitrator's power to modify that ruling nor subject to confirmation, correction or vacation by a trial court."].)

Beer contends that AAA's disqualification order meets the requirements of section 1283.4 because it "determined the issue submitted: whether the arbitrator can continue." We reject Beer's unsupported suggestion that the statute may be read so narrowly. Contrary to his contention that an award under section 1283.4 may include a decision on a *single* procedural issue in an arbitration, the language of the statute requires

---

[6]  Because we reject Beer's argument that the disqualification order was reviewable under the California Arbitration Act, we need not reach Valve's alternative contention that Beer's claim fails under the FAA.

"a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (§ 1283.4.) Nor is Beer's argument supported by any other authority. To the contrary, courts have declined to review arbitrator orders as an "award" if the order did not resolve the entire arbitrable controversy. For example, in *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767 (*Cinel*), the court found that the arbitrator's order, "which did not address any of the issues in controversy but instead refused to commence the proceedings for failure to pay fees, did not constitute an 'award' within the meaning of section 1283.4." (See also *Taska, supra*, 85 Cal.App.5th at pp.10-11 ["once the arbitrator 'has determined all issues that are necessary to the resolution of the essential dispute,' the arbitrator's ruling constitutes a final award under section 1283.4"], citing *Hightower, supra*, 86 Cal.App.4th at p. 1439.) As the court in *Taska* explained, "whether any particular ruling constitutes an 'award' turns on whether that ruling satisfies the statutory definition of an 'award.' And in the context of a series of rulings, this means that a particular ruling is an 'award' only if that ruling (1) 'determine[s] all issues that are necessary to the resolution' of "'the controversy'" being subjected to arbitration, and (2) leaves unresolved only those 'issues' that are 'potential,' 'conditional' or that otherwise 'could not have been determined' at the time of that ruling." (*Taska, supra*, 85 Cal.App.5th at p. 11, quoting *Lonky, supra*, 51 Cal.App.5th at p. 845; see also *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 403 [rejecting argument that order resolving single issue in arbitration constituted a reviewable "award"].)

Here, AAA's order disqualifying the arbitrator did not determine all of the issues necessary to the resolution of the controversy subject to arbitration, i.e., Beer's antitrust claims. As such, the order was not an "award" subject to judicial review pursuant to section 1286.2. To hold otherwise for preliminary orders like the one here would contravene "'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125, citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Such "sporadic judicial intrusion into ongoing arbitrations . . . would be highly inefficient . . . because it would disrupt the 'streamlined process'

9

that . . . is a hallmark of arbitration." (*Kaiser, supra*, 13 Cal.App.5th at p. 1146.)

Beer also argues that an "award" subject to vacatur is not limited by the definition in section 1283.4, because that statute sets forth the requirements for a *valid* award, but does not limit what awards may be reviewable by the court. Beer cites no authority for this proposition. Moreover, he ignores the numerous cases, including many from the Second Appellate District, that have looked to the language of section 1283.4 as the basis to determine what constitutes a reviewable award. (See, e.g., *Cinel, supra,* 203 Cal.App.4th at p. 767 ["Before confirming an award, the trial court has a duty, in order to follow the dictates of section 1283.4, to ensure that the arbitrator's 'award' is an 'award' within the meaning of that statute."]; see also *Ortiz, supra,* 106 Cal.App.5th at p. 606; *Taska, supra*, 85 Cal.App.5th at p. 8; *Lonky, supra,* 51 Cal.App.5th at pp. 843–844; *Maplebear, Inc. v. Busick, supra,* 26 Cal.App.5th at p. 407; *Kaiser, supra*, 13 Cal.App.5th at p. 1143.)

Even if the disqualification order does not qualify as an "award," Beer nevertheless argues that it should be reviewable because it constituted a final ruling that concluded the arbitration. The record contains no support for this assertion. Indeed, at the same time it disqualified Katz, AAA informed the parties that it would undertake the process to appoint a new arbitrator. Beer identifies no evidence that the arbitration was concluded after this point. Instead, he argues that even if the arbitration was "technically ongoing," the disqualification "'stayed' the matter indefinitely," thus warranting review. But AAA did not stay the arbitration indefinitely; instead, in the decision to disqualify Katz, AAA stated that any pending orders he had issued would be "stayed until the newly appointed arbitrator determines how the parties should proceed." Moreover, although Beer points to the months elapsed since the disqualification order as evidence of a stay, Valve notes that during the majority of that time, Beer's challenge to the order was pending before the trial court, and then before this court on appeal.[7] As such, substantial

---

[7] Beer argues that any delay was a result of AAA's desire to placate Valve, as supported by his contention that the arbitration for remaining claimants, who did not appeal, has not proceeded. This argument is not

10

evidence supports the trial court's conclusion that the arbitration was ongoing.

We agree with the trial court that Beer's citation to *Wallrich v. Samsung Electronics America, Incorporated* (7th Cir. 2024) 106 F.4th 609 does not aid him. There, AAA terminated the arbitration after the defendant refused to pay the arbitration filing fees. (*Id.* at p. 613.) "At that point, arbitration was complete," and the court found that the district court did not have the authority to compel the defendant to pay the fees. (*Id.* at p. 620.) Here, by contrast, the disqualification of an arbitrator did not end the arbitration or otherwise constitute a final award reviewable by the superior court.

We are not persuaded otherwise by Beer's reliance on California's Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards). Beer cites Standard 2, subdivision (c), which defines "conclusion of the arbitration" in several ways, including "[w]hen the arbitrator is disqualified or withdraws." He argues that this establishes that the arbitration is concluded once an arbitrator is disqualified. Reading the Ethics Standards as a whole, however, does not support this interpretation. Ethics Standard 4, subdivision (a) provides that the duration of an arbitrator's duty to comply with the standards extends "from acceptance of appointment until the conclusion of the arbitration." (See also Ethics Standard 7, subd. (f) [disclosure duty]; Standard 15, subd. (a) [duty of confidentiality].) In context, we read the definition in Standard 2 to mean that an arbitrator's disqualification concludes that arbitrator's duties, not that the disqualification results in termination of the entire arbitration. This interpretation is consistent with the statements from AAA that it would immediately begin the process to appoint another arbitrator following Katz's disqualification.

---

supported by any evidence in the record and therefore does not meet Beer's burden to show error on appeal.

11

Accordingly, the trial court did not err in concluding that the disqualification order was not reviewable as an award under section 1286.2 and therefore denying Beer's petition to vacate.[8]

**DISPOSITION**

The court's January 8, 2025 order is affirmed. Respondent is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


ZUKIN, P. J.


TAMZARIAN, J.

---

[8] Because we have determined that the disqualification order was not subject to review, the remainder of Beer's arguments asserting substantive error in that order are moot.

12